SECURITIES INVESTOR PROTECTION
  CORPORATION
JOSEPHINE WANG (JW0674)
General Counsel
KEVIN H. BELL (KB2260)
Senior Associate General Counsel
805 Fifteenth Street, N.W., Suite 800
Washington, DC 20005-2207
Telephone: (202) 371-8300



DOC # 6

U.S. DISTRICT COURT FILED DEC 15 2008 S.D. OF N.Y.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>                Plaintiff,<br>v.<br><br>BERNARD L. MADOFF, and<br>BERNARD L. MADOFF INVESTMENT<br>  SECURITIES LLC,<br>                Defendants.<br><br>SECURITIES INVESTOR PROTECTION<br>  CORPORATION,<br><br>                Applicant,<br>v.<br><br>BERNARD L. MADOFF INVESTMENT<br>  SECURITIES LLC,<br>                Defendant. | Civ. 08-10791 |

### MEMORANDUM OF LAW IN SUPPORT OF
### THE APPLICATION
### OF THE SECURITIES INVESTOR PROTECTION CORPORATION

This memorandum of law supports the Application of the Securities Investor Protection Corporation ("SIPC") seeking a protective decree that the customers of the Defendant, Bernard L. Madoff Investment Securities LLC, are in need of the protections afforded under the Securities

Investor Protection Act of 1970 ("SIPA," 15 U.S.C. §78aaa *et seq.*), and appointing a trustee for the liquidation of the business of the Defendant and counsel for said trustee. Part I of this memorandum provides a brief overview of SIPA, and Part II sets forth the grounds for SIPC's Complaint and Application.

## SIPA

SIPA was enacted in the wake of numerous failures of broker-dealer firms in the late 1960s[1] and became effective on December 31, 1970. Extensive amendments to SIPA were enacted on May 21, 1978 in order to facilitate the goals of the statute. SIPA created a program with the following purposes:

> to protect individual investors from financial hardship; to insulate the economy from the disruption which can follow the failure of major financial institutions; and to achieve a general upgrading of financial responsibility requirements of brokers and dealers to eliminate, to the maximum extent possible, the risks which lead to customer loss.[2]

SIPA accomplished these purposes essentially by two methods. First, it enhanced the power of the United States Securities and Exchange Commission ("Commission") to establish financial responsibility rules for brokers and dealers and to impose on the self-regulatory organizations[3] requirements for the financial examination of their members.[4] Second, it created SIPC and empowered it to commence proceedings for the liquidation of its members whose financial

---

[1] S. Rep. No. 1218, 91st Cong., 2d Sess. 3 (1970) ("Senate Report"); *see also* H.R. Rep. No. 1613, 91st Cong., 2d Sess. 2 (1970) ("House Report").

[2] Senate Report at 4.

[3] "Self-regulatory organizations" currently consist of national securities exchanges and the Financial Industry Regulatory Authority ("FINRA").

[4] SIPA §78iii(f). Similarly, SIPC is given responsibility to work with the self-regulatory organizations toward the standardization of their examining procedures and the development of procedures for the early detection of approaching financial difficulty of SIPC members. SIPA §78iii.

condition posed the threat of loss to their customers. Congress placed responsibility for its new program on the Commission, SIPC and the industry's self-regulatory organizations.

SIPC was created as a private, non-profit, industry-funded membership corporation[5] that would work within the self-regulatory structure. Its Board consists of seven persons – five appointed by the President and confirmed by the Senate, one designated by the Federal Reserve Board and one designated by the Secretary of the Treasury.[6] Most broker-dealers are required to be SIPC members and to pay assessments to SIPC.[7] If SIPC's funds should prove inadequate to carry out its purposes, SIPA authorizes a loan of up to one billion dollars from the United States Treasury.[8]

SIPC has no authority to examine its members. It relies on the self-regulatory organizations and the Commission for information regarding financially troubled brokers. If the Commission or any self-regulatory organization believes that a broker or dealer subject to its regulation is in or is approaching financial difficulty, it must immediately notify SIPC.[9] If SIPC determines that a member has failed or is in danger of failing to meet its obligations to customers and that one or more enumerated statutory conditions exist, it may apply to the appropriate federal district court for a "protective decree" adjudicating that the customers of the member are in need of the protection provided by SIPA.[10] If the court finds that at least one of the statutory conditions

---

[5] SIPA §78ccc(a) and 78ddd.

[6] SIPA §78ccc(c).

[7] SIPA §§78ccc(a)(2) and ddd(c).

[8] SIPA §§78ddd(f), (g) and (h).

[9] SIPA §78eee(a)(1).

[10] SIPA §78eee(a)(3); SIPA §78*lll*(13).

exists, it is required to issue such decree.[11] If the debtor consents to SIPC's application, the court is required to issue the requested decree.[12] Upon the issuance of a protective decree, the court shall appoint as trustee and as counsel for the trustee such persons as SIPC, in its sole discretion, designates.[13] Upon the filing of SIPC's application, the court to which the application is made has exclusive jurisdiction over the member firm and its property wherever located.[14]

A proceeding under SIPA is a liquidation proceeding.[15] The trustee has the same powers and title with respect to the broker-dealer and its property as a trustee in bankruptcy, including the right to avoid preferences.[16] SIPA does not attempt to make all customers whole and SIPC is not an insurer of customer accounts. SIPA establishes a plan of limited protection via the liquidation proceeding, in which SIPC's role is carefully delineated. It contemplates that customers' claims will be satisfied to the maximum extent possible from the assets already on hand with the member. SIPC's funds merely supplement those assets within the limits and in the manner provided under SIPA. The scope of customer protection and SIPC's exposure depends upon careful adherence to the statutory scheme.[17]

---

[11] SIPA §78eee(b)(1); *SIPC v. Barbour*, 421 U.S. 412 (1975).

[12] SIPA §78eee(b)(1).

[13] SIPA §78eee(b)(3).

[14] SIPA §78eee(b)(2)(A)(i).

[15] SIPA §78fff(a).

[16] SIPA §78fff-1(a).

[17] For a detailed discussion of SIPA and the rights and duties thereunder, see Harbeck, *Stockbroker Bankruptcy: The Role of the District Court and the Bankruptcy Court Under the Securities Investor Protection Act*, 56 Bankr. L. J. 277 (Summer 1982); Don & Wang, *Stockbroker Liquidations Under the Securities Investor Protection Act and Their Impact on Securities Transfers*, 12 CARDOZO L. REV. 509 (1990).

SIPA was not intended for the protection of brokers and dealers.[18] However, after a liquidation proceeding is commenced to protect a member's customers, SIPA authorizes the trustee to close out certain contractual commitments between the member and another broker-dealer.[19] This authority was designed to avoid the so-called "domino effect," namely, the chance that the demise of a member might precipitate the failure of one or more other broker-dealers.[20]

SIPC is not liable to the liquidated member in any respect. Its funds are available solely as advances to the trustee for the satisfaction of protected customers' claims and other specified purposes. SIPC's rights of subrogation and recoupment for advances are set forth in the statute.[21]

## SIPC'S APPLICATION

Upon information supplied by the Commission and FINRA, SIPC has made the determination required by SIPA §78eee(a)(3) that the Defendant has failed to meet its obligations to customers and that one or more of the conditions specified in SIPA §78eee(b)(1) exists. Each of the conditions specified in SIPA §78eee(b)(1) is a clear manifestation of serious difficulties that create, at the very least, an unacceptably high risk of loss of customer property for which the Defendant is responsible and accountable. SIPA §78eee(a)(3) requires that SIPC determine that at least one of these conditions exists, and SIPA §78eee(b)(1) requires that the Court issue a protective decree if the court finds the existence of any of the conditions.

According to information provided by the Commission and FINRA, the Defendant is insolvent, is unable to meet its obligations as they mature, and is not in compliance with the

---

[18] *See SEC v. Packer, Wilbur & Co., Inc.*, 498 F. 2d 978, 984 (2d Cir. 1974).

[19] SIPA §78fff-2(e).

[20] House Report at 9, Senate Report at 4, 11. *See also, SEC v. Aberdeen Securities Co.*, 480 F.2d 1121 (3d Cir.), *cert. denied*, 414 U.S. 1111 (1973).

[21] SIPA §78fff-3(a) and SIPA §78fff-2(c)(1).

requirements regarding financial responsibility under sections 15(c)(3) and 17(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§78o(c)(3) and 78q(a) (2000), and Commission Rules 15c3-1, 15c3-3 and 17a-3, 17 C.F.R. §§240.15c3-1, §240.15c3-3 and §240.17a-3. Consequently, three of the conditions referred to in SIPA §78eee(a)(3) and specified in SIPA §78eee(b)(1) exist.

Pursuant to SIPA §78eee(b)(1), if the defendant consents to the issuance of a protective decree, the Court "shall forthwith issue a protective decree."

## CONCLUSION

For the foregoing reasons, the relief requested in SIPC's Application should be granted, and a protective decree should be issued adjudicating that the customers of the Defendant are in need of the protections afforded by SIPA.

DATED: December 15, 2008

Respectfully submitted,

JOSEPHINE WANG (JW0674)
General Counsel

Kevin H. Bell (KB2260)
Senior Associate General Counsel
SECURITIES INVESTOR PROTECTION
 CORPORATION
805 Fifteenth Street, N.W., Suite 800
Washington, DC 20005
Telephone: (202) 371-8300
Facsimile: (202) 371-6728
E-mail: jwang@sipc.org
E-mail: kbell@sipc.org