☐ ORIGINAL
To The Clerk of The Court:
Please docket and place
this document in the public file.

LLS 3/2/09
Louis L. Stanton
U.S.D.J

Department of Justice

United States Attorney
Southern District of [New York]

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3-2-09

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

RECEIVED IN CHAMBERS
OF LOUIS L. STANTON
MAR 0 2 2009
UNITED STATES DISTRICT JUDGE

March 1, 2009

**In Camera Submission**

Hon. Louis L. Stanton
United States District Judge
Southern District of New York
500 Pearl Street, Room 2250
New York, NY 10007

    Re:    SEC v. Madoff, et al., 08 Civ. 10791 (LLS)

Dear Judge Stanton:

With the consent of plaintiff Securities and Exchange Commission ("SEC"), defendant Bernard L. Madoff ("Madoff"), the Securities Investor Protection Corporation ("SIPC"), Irving H. Picard, Esq. as trustee (the "Trustee") for the liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS"), and Ruth Madoff, the Office of the U.S. Attorney for the Southern District of New York (the "USAO"), asks the Court to issue the enclosed proposed order (the "Relief Order") finding that actions taken under the federal forfeiture laws by the USAO, the Federal Bureau of Investigation ("FBI"), the U.S. Marshals Service ("USMS"), and their employees and agents (collectively, the "Prosecutor"), with respect to Madoff's property as defined below, shall not constitute a violation of any of the following restraints set forth in the December 12, 2008 Order to Show Cause, Temporary Restraining Order and Order Freezing Assets and Granting Other Relief ("TRO"); the December 18, 2008 Order on Consent Imposing Preliminary Injunction, Freezing Assets and Granting Order Relief

Securities and Exchange Commission v. Madoff et al     Doc. 24

Against Defendants ("Preliminary Injunction"); and the February 9, 2009 Partial Judgment on Consent Imposing Permanent Injunction and Continuing Other Relief ("Permanent Injunction") entered by the Court in the above-captioned civil action against Madoff and BLMIS:

1. directing, in both section VIII of the TRO and section III of the Preliminary Injunction, that the designated individuals and entities "hold and retain within their control, and otherwise prevent, any withdrawal, transfer, pledge, encumbrance, assignment, dissipation, concealment or other disposal of any assets, funds, or other property (including money, real or personal property, securities, commodities, choses in action or other property of any kind whatsoever) of, held by, or under the direct or indirect control of Madoff . . . ."; and

2. directing, in both section XII of the TRO and section IX of the Preliminary Injunction, that "no creditor or claimant against the Defendants . . . shall take any action to interfere with control, possession or management of assets subject to the receivership"; and

3. directing, in both section XVII of the TRO and section XI of the Preliminary Injunction, that these Orders "shall be, and [are], binding upon Defendants and their partners, agents, servants, employees, attorneys, subsidiaries, affiliates, and those persons in active concert or participation with them" who receive actual notice of the Orders; and

4. directing, in Section IV of the Permanent Injunction, that "Sections III through XII" of the Preliminary Injunction "are incorporated into this Partial Judgment and shall remain in full force until this action is fully resolved or as otherwise ordered by this Court," to the extent Section IV of the Permanent Injunction incorporates the above-described restraints from Sections III, IX and XI of the Preliminary Injunction.

(Paragraphs 1 - 4 above are referred to collectively herein as the "Restraints").[1] The USAO asks that the requested exclusions from the Restraints apply to the Prosecutor's forfeiture-related

---

[1] The restrictions on property transfer set forth in the Preliminary Injunction were specifically incorporated in an order entered on January 16, 2009, by the Honorable Lawrence M. McKenna of the United States District Court for the Southern District of New York, releasing Madoff on bail.

activity – described in greater detail in the following paragraph – with respect to any and all assets, funds, or other property (including money, real or personal property, securities, commodities, choses in action or other property of any kind whatsoever) of, held by, or under the direct or indirect control of Madoff, or for Madoff's direct or indirect beneficial interest, whether or not held in Madoff's name, wherever situated, in whatever form such assets may presently exist and wherever located (the "Madoff Property").

The Prosecutor's authority under the federal forfeiture laws includes, but is not limited to:

>   a.   filing a verified civil complaint pursuant to Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (the "Supplemental Rules") in the United States District Court for the Southern District of New York ("SDNY") naming particular assets as defendants *in rem* and seeking the forfeiture of the assets to the United States of America under the federal asset forfeiture laws – for example, pursuant to 18 U.S.C. § 981(a)(C) as property constituting or derived from proceeds of an offense constituting "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7) (such as mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343), and/or as property involved in money laundering activity or property traceable to such property, pursuant to 18 U.S.C. § 981(a)(1)(A) ("forfeitable property");
>
>   b.   seeking the issuance of a warrant for arrest *in rem* pursuant to the Supplemental Rules upon the filing of a Verified Complaint, see 18 U.S.C. § 982(b)(2)(A), Supplemental Rule G(3);
>
>   c.   in the case of a Verified Complaint seeking the forfeiture of real property, serving notice and posting the property pursuant to 18 U.S.C. § 985;
>
>   d.   applying to an SDNY Magistrate Judge for a seizure warrant upon a showing of probable cause that particular assets are forfeitable property, pursuant to 18 U.S.C. § 981(b)(2), (3);
>
>   e.   applying to an SDNY District Judge for a restraining or protective order either prior to or after the filing of a Verified Complaint pursuant to Supplemental

Rule G(2) to preserve the availability of property for civil forfeiture, pursuant to 18 U.S.C. § 983(j);

f.	providing notice, in the forfeiture allegations of a criminal indictment, *see* Fed. R. Crim. P. 32.2(a), that the Government intends to seek forfeiture of the defendant's right, title and interest in property forfeitable as proceeds of the crimes charged in the indictment (*see, e.g.* 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)); as property involved in money laundering transactions in violation of 18 U.S.C. §§ 1956 and/or 1957 or property traceable to such property, pursuant to 18 U.S.C. § 982(a)(1); as an interest acquired or maintained in violation of the RICO statute, 18 U.S.C. § 1962; as an interest in, security of, claim against, or property or contractual right affording a source of influence over a RICO enterprise; or as property constituting or derived from proceeds obtained directly or indirectly from racketeering activity in violation of 18 U.S.C. § 1962, pursuant to 18 U.S.C. § 1963(a); a sum of money representing the value of such forfeitable property in the form of a money judgment, *see, e.g., United States v. Fruchter*, 411 F.3d 377, 384 (2d Cir. 2005); *United States v. Vampire Nation*, 451 F.3d 189, 202-03 (3d Cir. 2006); or other assets of the defendant as a substitute for property directly traceable to the offense that is not available for forfeiture; *see* 18 U.S.C. § 1963(m); 21 U.S.C. § 853(p);[2]

g.	applying to an SDNY District Judge for a protective order either prior to or after the filing of an indictment to preserve the availability of property for criminal forfeiture, pursuant to 18 U.S.C. § 853(e), or for a criminal seizure warrant pursuant to 18 U.S.C. § 853(f);

h.	taking any other steps authorized by law to preserve the availability of assets for forfeiture, so that the proceeds from the sale of the forfeited property may be restored to victims of the offense giving rise to the forfeiture, *see, e.g.,* 21 U.S.C. § 853(g) (court has broad authority to enter orders to preserve forfeited property); 21 U.S.C. § 853(i) (Attorney General's authority to restore forfeited property to victims); 28 C.F.R. Part 9 (procedures governing petitions for remission or mitigation of forfeitures); and

i.	entering into agreements with owners and third parties to resolve third party claims, *see, e.g.,* 21 U.S.C. § 853(i)(2); *In re W.R. Huff Asset Management*

---

[2] The procedures set forth in the narcotics criminal forfeiture statute, 21 U.S.C. § 853 (excluding Section 853(d)), are applicable to criminal forfeitures of property constituting the proceeds of specified unlawful activity, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) (*see* 18 U.S.C. § 2461(c)), and to criminal forfeitures of property involved in money laundering transactions, pursuant to 18 U.S.C. § 982(a)(2) (*see* 18 U.S.C. § 982(b)(1)).

*Co.*, LLC, 409 F.3d 555 (2d Cir. 2005), or to preserve the value of a dissipating asset by liquidating the asset under the terms of a stipulation and order of interlocutory sale, the proceeds of which are held as a "substitute" for the property pending the resolution of forfeiture proceedings, *see, e.g., United States v. BCCI Holdings (Luxembourg), S.A.*, 69 F.Supp.2d 36, 44-45 (D.D.C. 1999); Supplemental Rule G(7); Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Local Admiralty Rule E.4 (1997).

Because federal law -- including, but not limited to, the provisions described above -- specifically authorizes the Prosecutor to seize and forfeit the proceeds of crime and property involved in money laundering offenses, the USAO submits that forfeiture-related activity such as those described in the preceding subparagraphs does not violate the Restraints or any other provisions in the Freeze Orders.[3] In an abundance of caution, however, the USAO wishes to bring the matter to the Court's attention before initiating forfeiture-related activity. Should the Court conclude that any or all of the Restraints do apply either to the Prosecutor or the Prosecutor's forfeiture-related activity, the USAO requests that the Prosecutor be exempted from those provisions with respect to any and all of the Madoff Property. The actions excluded from the Restraints would include, but not be limited to, the location, restraint, seizure, forfeiture, sale, transfer, encumbrance, disposal, management, maintenance, containment, negotiation, preservation, removal, storage, distribution, or dissipation of the Madoff Property.

As part of the Relief Order, the USAO also requests the Court to direct that the Madoffs and their counsel shall be relieved from the Restraints to the extent needed to cooperate

---

[3] The Prosecutor's authority arises from the fact that the government's interest in the property vests at the time of the act giving rise to the forfeiture, unless a third party acquired the property some time thereafter as a bona fide purchaser for value. *See* 21 U.S.C. § 853(c).

with the Prosecutor regarding the restraint, seizure, and disposition of forfeitable property in accordance with federal law.

The USAO also requests, notwithstanding any other provisions of this Order, that the Restraints continue to apply to Ruth Madoff's New York City apartment, her home in Palm Beach, Florida, and the Madoffs' home in Montauk, New York (the "Madoff Homes"), without prejudice to a future application from the USAO for an order excluding from the Restraints any actions taken by the Prosecutor under the forfeiture with respect to the Madoff Homes.[4]

Respectfully submitted,

LEV L. DASSIN
Acting United States Attorney

By: *Barbara Ward*

Sharon E. Frase
Barbara A. Ward
Assistant United States Attorneys
(212) 637-2329/1048

Enclosure

---

[4] While Madoff and his counsel do not object to the entry of the Relief Order, they maintain that some of the assets covered by the Relief Order (in particular, the New York City apartment, approximately $45 million in municipal bonds on deposit in an account held by Ruth Madoff at COHMAD Securities Corporation, and approximately $17 million on deposit in an account held by Ruth Madoff at Wachovia Bank, N.A.) are unrelated to the alleged Madoff fraud and only Ruth Madoff has a beneficial ownership interest in these assets.

copies (by e-mail):

Alexander M. Vasilescu
Regional Trial Counsel/Trial Unit Chief
U.S. Securities and Exchange Commission
VasilescuA@sec.gov

Alistaire Bambach
Assistant Regional Director
Bankruptcy Counsel for Division of Enforcement
U.S. Securities and Exchange Commission
BambachA@sec.gov

Ira Sorkin, Esq.
Mauro Wolfe, Esq.
Dickstein Shapiro LLP
153 East 53rd Sreet, Floor 54
New York, NY 10022
(212) 896-6525
sorkini@dicksteinshapiro.com
wolfem@dicksteinshapiro.com
*Attorneys for Bernard L. Madoff and Ruth Madoff*

David Sheehan, Esq.
John Carney, Esq.
Baker & Hostetler LLP
45 Rockefeller Plaza, 11th Floor
New York, New York 10111
(212) 589-4616/4255
dsheehan@bakerlaw.com
jcarney@bakerlaw.com
*Counsel to Irving H. Picard, Esq. as trustee for the liquidation of the business of Bernard L. Madoff Investment Securities LLC*

Stephen P. Harbeck, President
Josephine Wang, Esq., General Counsel
Kevin Bell, Esq., Senior Assoc. General Counsel
Securities Investor Protection Corporation
805 15th Street, N.W., Suite 800
Washington, D.C. 20005-2715
sharbeck@sipc.org
jwang@sipc.org
kbell@sipc.org