UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x
SECURITIES AND EXCHANGE           :
COMMISSION,                       :
                                  :
                    Plaintiff,    :   Case No. 08 Civ. 10791 (LLS)
                                  :
        vs.                       :
                                  :
BERNARD L. MADOFF and              :
BERNARD L. MADOFF INVESTMENT       :
SECURITIES LLC,                    :
                                  :
                    Defendants.   :
                                  :
---------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PARTIAL RELIEF FROM INJUNCTION

Movants The Blumenthal & Associates Florida General Partnership, Marc Cherno, Judith Rock Goldman, the Horowitz Family Trust,[1] Steven Morganstern, M.D., The Martin Rappaport Charitable Remainder Unitrust, and Martin Rappaport ("Movants") submit his Memorandum of Law in Support of Motion for Partial Relief from Injunction, requesting that the Court issue an order granting partial relief from the Partial Judgment on Consent Imposing Permanent Injunction and Continuing Other Relief [Dkt. No. 18][2] ("Permanent Injunction") to allow the Movants, who are customers of Bernard L. Madoff Investment Securities LLC ("BMIS") and creditors of BMIS and Bernard L. Madoff ("Madoff") individually, to commence an involuntary

---

[1] The Blumenthal & Associates Florida General Partnership, Marc Cherno, Judith Rock Goldman, and the Horowitz Family Trust are members of the Unofficial Committee of Certain Claim Holders in *SIPC v. Bernard L. Madoff Investment Securities LLC*, No. 08-1789 (Bankr. S.D.N.Y.).

[2] All citations to filings refer to the docket in the above-referenced action, unless the citation indicates otherwise.

bankruptcy case against Madoff pursuant to Section 303(b) of the Bankruptcy Code. As discussed below, this Motion should be granted because: (1) as a matter of efficiency and consistency, the well-established provisions of the Bankruptcy Code should govern the distribution of Madoff's assets to creditors, and this distribution should be coordinated with the SIPA liquidation of BMIS; and (2) courts disfavor injunctions that preclude creditors from enforcing the rights and remedies provided by the Bankruptcy Code, and in any event, the continuation of the injunction is not appropriate under the circumstances of this case.

## I. INTRODUCTION

The background of this matter is well known. The salient facts are a massive fraud and Ponzi scheme perpetrated by Madoff, resulting in losses to thousands of BMIS customers. The Department of Justice charged Madoff with eleven counts, including securities fraud, money laundering, and theft and embezzlement.

Shortly after Madoff's fraud was exposed, this Court issued certain orders enjoining third parties, such as the Movants, from commencing a bankruptcy proceeding against Madoff, among others, absent permission from the Court. Specifically, on December 12, 2008, the Court issued a temporary restraining order "preliminarily enjoining . . . any third party . . . from filing a bankruptcy proceeding against [BMIS and Madoff] without . . . approval of this Court after a hearing." Order to Show Cause, Temporary Restraining Order, and Order Freezing Assets and Granting Other Relief § XIII ("Temporary Restraining Order") [Dkt. No. 3]. On December 18, 2008, the Court issued an Order providing for the following preliminary injunction:

> Defendants [and various related parties] and any third party . . . are preliminarily enjoined from filing a bankruptcy proceeding against the Defendants without filing a motion on at least three (3) days' notice to the Plaintiff and approval of this Court after a hearing.

Order on Consent Imposing Preliminary Injunction ("Preliminary Injunction") § V [Dkt. No. 8]. On February 9, 2009, the Court issued the Permanent Injunction, which provided that the injunction provisions contained in the Preliminary Injunction issued on December 18, 2008 would remain in effect. Permanent Injunction § IV [Dkt. No. 18].

On March 12, 2009, Madoff pled guilty to all of the counts with which he was charged, and he filed a plea allocution describing some of the details of his fraud. *See* Plea Allocution of Bernard L. Madoff ("Madoff Plea Allocution"), No. 09-213 [Dkt. No. 50].

The Movants are BMIS customers who are creditors of BMIS and Madoff individually. Collectively, the Movants hold claims against BMIS and Madoff totaling more than $64 million. As the Court is aware, BMIS is currently being liquidated pursuant to the Securities Investor Protection Act. *See SIPC v. Bernard L. Madoff Investment Securities LLC*, No. 08-1789 (Bankr. S.D.N.Y.). However, no bankruptcy case has been commenced against Madoff individually, nor has a receiver been appointed for Madoff's property.[3]

The Movants seek to commence an involuntary case against Madoff individually pursuant to Section 303(b) of the Bankruptcy Code, by filing an involuntary petition against Madoff substantially in the form attached hereto as Exhibit 1. As the proposed involuntary petition demonstrates, the Movants satisfy the requirements for involuntary relief: (1) three or more entities hold claims against Madoff; (2) as Madoff has admitted to perpetrating the fraud giving rise to the claims, the claims are neither contingent nor disputed; (3) the undisputed debt

---

[3] The Court's December 12, 2008 Temporary Restraining Order appointed Lee Richards, Esq. as receiver for the assets of BMIS, Madoff International Ltd., and Madoff Ltd. -- *not* Madoff individually. Upon the commencement of the SIPA liquidation proceeding as to BMIS and the resulting appointment of a SIPA trustee with the authority over BMIS property, Mr. Richards' receivership over the assets of BMIS was terminated. *See* Preliminary Injunction § VII [Dkt. No. 8].

exceeds $13,475; and (4) Madoff is generally not paying his debts as they become due. *See* Bankruptcy Code § 303(b)(1), (h).

As discussed in greater detail below, Movants should be permitted to file an involuntary petition for two reasons. First, Congress has specifically designated the Bankruptcy Code as the applicable body of law to govern disputes between creditors and debtors in this context. Accordingly, the Bankruptcy Code's well established laws and procedures should govern the marshalling of Madoff's property, paying expenses, giving priority to Madoff's creditors, and distributing the proceeds to creditors -- not the vague notion of "fair distribution," which has previously been referred to in this proceeding. *See* Temporary Restraining Order at p. 5 [Dkt. No. 3]. Moreover, placing Madoff in bankruptcy will prevent duplicative and potentially inconsistent multiple litigations by creditors against Madoff, some of which have already been filed. In addition, as BMIS is currently being liquidated in the bankruptcy court pursuant to SIPA and the Bankruptcy Code, Madoff should likewise be placed in bankruptcy so that the marshalling and distribution of assets to creditors of the respective BMIS and Madoff estates can be coordinated to prevent inconsistencies and promote efficiency.

Second, injunctions preventing creditors from availing themselves of the rights granted by the Bankruptcy Code are generally disfavored. Movants are unaware of any statutory authority allowing for the termination of such rights. Although the Court's injunction arose out of the appointment of a receiver for the property of BMIS and certain of its foreign affiliates, to the best of Movants' knowledge, no receiver has ever been appointed for Madoff's personal assets. As such, the Movants should be permitted to file an involuntary petition against Madoff.

## II. ARGUMENT

### A. As a Matter of Efficiency and Consistency, the Well-Established Provisions of the Bankruptcy Code Should Govern the Distribution of Madoff's Assets to Creditors, and this Distribution Should Be Coordinated with the SIPA Liquidation of BMIS

To the best of the Movants' knowledge, virtually all of the customers of BMIS are also creditors of Madoff individually. The SEC appears to have sought an injunction against third parties commencing a bankruptcy case against Madoff individually to "preserve the status quo, and to protect this Court's ability to award equitable relief in the form of disgorgement of illegal profits from fraud and civil penalties, and *to preserve the Court's ability to approve a fair distribution for victims of the fraud.*" Temporary Restraining Order at p. 5 [Dkt. No. 3] (emphasis added).

However, provided that the Bankruptcy Code's statutory criteria are fulfilled, as they are here, Congress has designated the Bankruptcy Code as the applicable law to govern disputes between creditors and debtors:

> Congress has enacted a uniform federal bankruptcy policy and has granted the bankruptcy courts power to fairly adjudicate and administer disputes between debtors and creditors. The debtor would be irreparably harmed by the denial of his voluntary access to the rights conferred by the Bankruptcy Act, and creditors would be irreparably harmed by their inability to secure access to the rights afforded creditors under the Act. An order restricting access to the bankruptcy court, other than as specifically provided by Congress in the Bankruptcy Act, would not be in the public interest.

*Jordan v. Independent Energy Corp.*, 446 F. Supp. 516, 530 (N.D. Tex. 1978); *accord In re Strug-Division, LLC*, 375 B.R. 445, 449 (Bankr. N.D. Ill. 2007) ("[C]ourts must be mindful of, and attempt to preserve, the balance of interests fashioned by Congress under Chapter 11 of the Bankruptcy Code, including a policy of open access to the bankruptcy process."). Indeed, the Bankruptcy Code provides statutory authority and procedures for locating assets, avoiding

prepetition transfers, providing notice to creditors, processing claims, and distributing assets. As a matter of efficiency and consistency, the bankruptcy court, governed by the well-established principles set forth in the Bankruptcy Code, should be presiding over the distribution of Madoff's assets to creditors, and any such case should be consolidated or administered with the BMIS liquidation proceeding to cooperatively maximize efficiency and minimize inconsistencies in the distribution of assets to creditors of the two estates.

In addition, although the BMIS liquidation trustee has certain legal rights to pursue BMIS property, including BMIS property in Madoff's possession, significant assets continue to be in Madoff's possession and potentially in the possession of third parties to whom he transferred property. *See* Statement of Financial Condition of Bernard L. Madoff (Exhibit 2) (describing Madoff's assets as well as his past and anticipated future expenses). At this point it is uncertain whether all of Madoff's assets (including transferred assets) will be part of the BMIS estate. If Madoff is not placed in bankruptcy, creditors may initiate multiple litigations to recover their assets. Indeed, creditors are already beginning to file such cases in multiple jurisdictions, *see, e.g., Leonhardt v. Madoff*, No. 09-2032 (S.D.N.Y. filed March 5, 2009), and courts have begun to issue retraining orders against Madoff's assets. *See* Temporary Restraining Order, *Town of Fairfield v. Madoff*, No. 09-5023735 (Conn. Super. Ct. Mar. 30, 2009) (Exhibit 3). In contrast to multiple potentially duplicative litigations, if Madoff is placed in bankruptcy, the United States Bankruptcy Court for the Southern District of New York can preside over the case in coordination with the BMIS liquidation. Moreover, a trustee will be appointed who will have direct rights as to Madoff's property -- rights that the BMIS liquidation trustee can only assert indirectly. *See* Bankruptcy Code §§ 541-553; Bankruptcy Rule 2004. These rights include collection and turnover of property (Bankruptcy Code §§ 541, 542), avoidance of prepetition

transfers, potentially including transfers to Madoff's family members or payments of their obligations (Bankruptcy Code §§ 544-553), and broad-ranging discovery under Bankruptcy Rule 2004.[4]

Finally, Movants are concerned with the specter of overlapping asset administrations which could delay or prejudice distributions to creditors. The Justice Department has indicated its intent to seek forfeiture of certain of Madoff's personal assets. *See* Government's Notices of Intent to Seek Forfeiture, No. 09-213 [Dkt. Nos. 59, 60]. In fact, just today it was reported that U.S. marshals seized a yacht and speedboat owned by Madoff. *See* Jane Musgrave, "Feds Begin to Seize Madoff Assets," *Palm Beach Post* (April 1, 2009). In addition, the SEC's complaint against Madoff seeks disgorgement and the imposition of civil penalties. *See* Complaint at pp. 10-11 [Dkt. No. 1]. It is unclear whether the Justice Department and the SEC intend to distribute

---

[4] Examination of recent events in connection with another Ponzi scheme further demonstrates the propriety of filing an involuntary petition against Madoff individually. Marc S. Dreier was recently indicted for violating the federal securities laws in connection with running a Ponzi scheme. The court presiding over the SEC action against Mr. Dreier appointed a receiver for his assets and, similar to this court, enjoined third parties from filing a bankruptcy proceeding against Mr. Deier or his law firm Dreier LLP. *See SEC v. Dreier*, No. 08-10617 (S.D.N.Y. Dec. 10, 2008) [Dkt. No. 2]. Notwithstanding this injunction, the Court permitted the receiver for Mr. Dreier's property to place Dreier LLP in bankruptcy [Dkt. No. 21], and later, to file an involuntary petition against Mr. Dreier individually, which the SEC did not oppose. *Id.* [Dkt. Nos. 26 ]. In requesting the court's permission to place Dreier LLP in bankruptcy, the receiver noted that "[o]nce these bankruptcies are begun, the respective bankruptcy trustees will have the comprehensive authority provided by the bankruptcy laws to gather and conserve assets." *Id.* [Dkt. No. 21]. Shortly after Mr. Dreier and Dreier LLP were placed in bankruptcy, the receiver requested termination of the receivership as "duplicative" and "unnecessary" in light of the bankruptcy proceedings. *Id.* [Dkt. No. 32].

The present action is similar to the Dreier case, in that allowing Madoff to be placed in bankruptcy, in the same bankruptcy court as BMIS, will enable the assets of the two estates to be marshaled and distributed in a coordinated, consistent, and efficient manner in accordance with the Bankruptcy Code.

any such funds to Madoff's customers[5] and what rules would govern any such distributions. Under these circumstances, considerations of efficiency and fairness to victims dictate coordinated proceedings in the bankruptcy court.

B. **Injunctions Preventing Creditors from Availing Themselves of the Bankruptcy Code's Rights and Remedies are Generally Disfavored**

As noted above, a receiver was appointed only for the assets of BMIS and certain of its foreign affiliates, *not* Madoff's assets. *See* Temporary Restraining Order § XIII [Dkt. No. 3]; Preliminary Injunction § V [Dkt. No. 8]; Permanent Injunction § IV [Dkt. No. 18]. Yet, the injunction contained in the Court's Orders described herein prohibits creditors from filing an involuntary case against Madoff individually.

Movants are unaware of any statutory authority authorizing a court to prohibit third parties from availing themselves of the rights and remedies set forth in the Bankruptcy Code. Even if a receiver had been appointed for Madoff's personal assets (one was not), courts have generally held that injunctions arising from such a receivership are improper to the extent that they prevent creditors from availing themselves of the rights and remedies provided in the Bankruptcy Code.[6] *See Jordan v. Independent Energy Corp.*, 446 F. Supp. 516, 530 (N.D. Tex.

---

[5] An issue of particular importance to creditors is whether any disgorged property or civil penalties obtained by the government from Madoff will go to creditors, or if instead, this money will go to the U.S. Treasury. *See Official Committee of Unsecured Creditors of Worldcom, Inc. v. Securities and Exchange Commission*, 467 F.3d 73, 81-82 (2d Cir. 2005) (discussing that the government has discretion, subject to court approval, to determine whether to distribute disgorged funds and civil penalties to defrauded investors or whether to provide this money to the U.S. Treasury). If the Movants are permitted to file an involuntary petition against Madoff, the Bankruptcy Code will govern if and how any such disgorged funds or civil penalties will be distributed. *See* 11 U.S.C. §§ 726(a)(4).

[6] Courts have differed on whether an injunction similar to the one at issue here is permissible in receivership cases where the court already has exercised *in rem* jurisdiction over certain assets. *See generally United States v. Royal Business Funds Corp.*, 29 B.R. 777, 779 (S.D.N.Y. 1983) (discussing authorities); *SEC v. Byers*, 592 F. Supp. 2d 532, 537 (S.D.N.Y. 2008) (permitting parties and non-parties to file motions requesting permission to file an involuntary bankruptcy

1978) ("An order restricting access to the bankruptcy court, other than as specifically provided by Congress in the Bankruptcy Act, would not be in the public interest."); *see also In re Naftalin & Co.*, 315 F. Supp. 463, 468 (D. Minn. 1970) ("It has been directly held that the appointment of a receiver in an action by the Securities and Exchange Commission would not deter the liquidation of the entity in a bankruptcy proceeding."), *vacated on other grounds*, 469 F.2d 1166 (8th Cir. 1972); *accord In re Yaryan Naval Stores Co.*, 214 F. 563, 565 (6th Cir. 1914) (discussing "the intention of Congress to confer the rights and privileges of the Bankruptcy Act upon all persons and all corporations except those expressly exempted from its operation"); *In re Donaldson Ford, Inc.*, 19 B.R. 425, 428-429 (Bankr. N.D. Ohio 1982) ("It has generally been held in this circuit that the pendency of an equity receivership will not ordinarily prevent a corporation from filing a voluntary petition in bankruptcy.").[7] Accordingly, "[a]ny conflicting injunction order must yield to the Congressional intent to grant bankruptcy relief." *Jordan*, 446 F. Supp. at 527.

The foregoing authority demonstrates that an injunction is improper to the extent that it limits creditors' rights and remedies under the Bankruptcy Code, even where a receiver has been appointed. Here, *no receiver has been appointed* for Madoff's personal property, which further

---

petition, upon a showing of "benefit" to "the receivership estate"). Here, there is no receivership over Madoff's personal assets and, in any event, there is good reason to limit any injunction.

[7] For similar reasons, courts have held that "an agreement not to file bankruptcy is unenforceable because it violates public policy." *In re Madison*, 184 B.R. 686, 690 (Bankr. E.D. Pa. 1995); *see also In re Weitzen*, 3 F. Supp. 698 (S.D.N.Y. 1933) ("The agreement to waive the benefit of bankruptcy is unenforceable. To sustain a contractual obligation of this character would frustrate the object of the Bankruptcy Act.").

supports the Movant's request for relief from the injunction to the extent that it bars Movants from pursuing their rights against Madoff personally as provided by the Bankruptcy Code.[8]

## III. CONCLUSION

For the reasons stated herein, the injunction preventing Movants from filing an involuntary petition against Madoff should be modified to permit Movants to file such a petition substantially in the form attached hereto.

---

[8] It should also be noted that the Orders containing the injunction at issue were issued without providing individual notice to affected parties. In similar situations, courts have held that such an injunction is appropriate only in "rare cases." *Accord In re Johns-Manville Corp.*, 517 F.3d 52, 67 (2d Cir. 2008) (holding that court's injunction barring third-party claims against debtor's insurer was improper and that such an injunction improperly shielded the insurer from liability "without a filing and without the safeguards of the [Bankruptcy] Code"), *cert. granted* 129 S. Ct. 761 (2009); *In re Dow Corning Corp.*, 280 F.3d 648, 658 (6th Cir. 2002) (holding that "enjoining a non-consenting creditor's claim is only appropriate in 'unusual circumstances'" and specifying criteria that must be fulfilled in order for such an injunction to be proper).

Dated: April 1, 2009

Respectfully submitted,

MILBERG LLP

/Jonathan M. Landers (JL 1468)
Matthew Gluck (MG 4148)
Brad N. Friedman (BF 9309)
One Pennsylvania Plaza
New York, NY 10119-0165
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

SEEGER WEISS LLP
Christopher A. Seeger
Stephen A. Weiss
One William Street
New York, New York
Telephone: (212) 584-0700
Facsimile: (212) 584-0799

***Attorneys for Movants***

CERTIFICATE OF SERVICE

I, Jonathan M. Landers, certify that on the 1st day of April 2009, I caused a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL RELIEF FROM INJUNCTION to be served on all parties to this action via electronic filing and on the following parties via Federal Express overnight delivery:

Alexander M. Vasilescu, Esq.
Alistair Bambach, Esq.
Andrew Calamari, Esq.
Regional Trial Counsel / Trial Unit Chief
Northeast Regional Office
Securities and Exchange Commission
3 World Financial Center
Room 400
New York, NY 10281-1022

Irving H. Picard, Esq.
SIPA Trustee
Baker & Hostetler, LLP
45 Rockefeller Plaza
New York, NY 10111

Kevin H. Bell, Esq.
Josephine Wang, Esq.
Security Investment Protection Corporation
805 Fifteenth Street, NW
Suite 800
Washington, D.C. 20005-2207

David J. Sheehan, Esq.
Douglas E. Spelfogel, Esq.
Alissa M. Nann, Esq.
Brian K. Esser, Esq.
John Moscow, Esq.
Jonathan R. Barr, Esq.
Lauren Resnick, Esq.
Richard J. Bernard, Esq.
Seanna Brown, Esq.
Baker Hostetler, LLP
45 Rockefeller Plaza
New York, NY 10111

Marc Litt, Esq.
Assistant U.S. Attorney
United States Attorney's Office
for the Southern District of New York
1 St. Andrew's Plaza
New York, NY 10007

Ira Lee Sorkin, Esq.
Daniel James Horwitz, Esq.
Nicole Pappas De Bello, Esq.
Mauro Michael Wolfe, Esq.
Dickstein Shapiro, LLP
1177 Avenue of the Americas
New York, NY 10036-2714

_____
Jonathan M. Landers