UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
―――――――――――――――――――――――――――x
                                          :
SECURITIES AND EXCHANGE                   :
COMMISSION,                               :
                                          :
                 Plaintiff,               :   Case No. 08 Civ. 10791 (LLS)
                                          :
    vs.                                   :
                                          :
BERNARD L. MADOFF and                     :
BERNARD L. MADOFF INVESTMENT              :
SECURITIES LLC,                           :
                                          :
                 Defendants.              :
                                          :
―――――――――――――――――――――――――――x
```

## **REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR PARTIAL RELIEF FROM INJUNCTION**

Movants The Blumenthal & Associates Florida General Partnership, Marc Cherno, Judith Rock Goldman, the Horowitz Family Trust, Steven Morganstern, M.D., The Martin Rappaport Charitable Remainder Unitrust, and Martin Rappaport ("Movants") submit this Reply Memorandum of Law in Further Support of Motion for Partial Relief from Injunction [Dkt. No. 37].

Movants filed the Motion to ensure that all of Madoff's assets will be made available to victims, and to ensure the application of a well-established and efficient process for collecting assets, determining claims, and distributing money to creditors. The Government's[1] response acknowledges the need to distribute funds to victims, but the Government fails to demonstrate that it has well-established, comprehensive, and efficient procedures in place to effectuate this

---

[1] The Department of Justice ("DOJ") and the Securities and Exchange Commission ("SEC") are termed herein as the "Government" when referred to collectively.

purpose. Instead, the Government offers a lengthy and self-serving exegesis describing its interpretation of its forfeiture rights -- an interpretation that mischaracterizes the law and which is largely irrelevant to the issues before the Court.

If the Government genuinely intends[2] to distribute all forfeitures to Madoff victims, then it is difficult to understand why the Government opposes the bankruptcy court's supervision of such distribution, particularly given the Government's position in the *Dreier* case. Similar to *Madoff*, *Dreier* involves the respective bankruptcies of Dreier LLP and Marc Dreier individually, as well as a criminal action and a civil suit brought by the SEC. In *Dreier*, the DOJ did not oppose efforts to place Dreier in bankruptcy, and in fact, the DOJ recently filed a letter pledging the Government's cooperation with the two bankruptcy trustees and disclosing that "the Government has repeatedly consented to the Trustee's requests to release estate assets" and offering "to give our binding consent with respect to particular identified assets as the Trustee seeks to dispose of them." *See* Letter, *In re Dreier LLP*, No. 08-15051 (Bankr. S.D.N.Y. filed Mar. 25, 2009) (Exhibit A). Yet, the Government contends that similar cooperation would somehow be costly and ineffective in *Madoff*.

The question of which assets are properly within the Government's right of forfeiture and which are not is not currently before the Court on this Motion and need not be decided at this juncture. This is an issue of what assets constitute property of the estate under Bankruptcy Code Section 541(a), and the proper venue for the adjudication of this issue is in the Bankruptcy Court.

---

[2] The Government states that it "intends" to distribute forfeited property to victims. DOJ Opposition at 1; *see also* SEC Opposition at 1 ("The SEC . . . *expects* that any assets forfeited . . . will . . . be distributed to Madoff's victims and creditors."). This cryptic "assurance" is at best ambiguous. The Government is silent as to what it intends to do with any civil penalties obtained from Madoff. This further supports placing Madoff in bankruptcy, as 11 U.S.C. Section 746 (a)(4) provides that forfeitures, fines, and penalties are subordinate to customer claims. *See* U.S.C. 11 U.S.C. § 746(a)(4).

Movants recognize that the Government may have different views on these issues. However, such disputes are not decided unilaterally by the Government. In any event, as discussed below, there is likely to be Madoff property beyond the Government's reach. That property must be protected for creditors by placing Madoff in bankruptcy.

Finally, it should be noted that while the Government spends a great deal of time flexing its forfeiture muscles, the Government essentially ignores that the Motion is a request to modify an injunction that prevents creditors from asserting their statutory rights under the Bankruptcy Code. The DOJ ignores this issue, while the SEC argues that such injunctions are proper where a receiver has been appointed. *See* SEC Opposition at 3. As the Court is aware, no receiver has been appointed for Madoff's assets, rendering the SEC's argument inapposite and raising a serious question about the validity of the injunction. In any event, as discussed in the Motion and herein, there are compelling reasons for vacating the injunction, in part, to allow Movants to file an involuntary case against Madoff.

**I.     ARGUMENT**

    **A.     Placing Madoff in Bankruptcy Will Create Efficiencies and Provide More Direct Access to Madoff's Property**

The Movants have demonstrated that the Bankruptcy Code's well-established provisions should apply for marshalling assets, processing claims, and distributing money to creditors. The Government argues that placing Madoff in bankruptcy will create additional administrative expense and litigation. *See* SEC Opposition at 3; DOJ Opposition at 1. Apparently, the Government thinks that having multiple distribution schemes governed by different bodies of law before different courts is "efficient." The Government's assertion that placing Madoff in bankruptcy will increase costs is disingenuous, given that the DOJ is authorized to select and supervise, through the United States Trustee appointed by the Attorney General, any Madoff

bankruptcy trustee who might be appointed. *See generally* 28 U.S.C. § 586. The United States Trustee has the unique power to control costs and ensure efficiency. *See* Collier on Bankruptcy § 6.01 (15th Ed.) ("[T]he United States trustee is to supervise the case administration of chapter 7 trustees."). Moreover, there is no question that Judge Lifland is more than capable of supervising a consolidated BMIS/Madoff bankruptcy case so as to avoid undue expense. In any event, the Government offers no authority indicating that cost concerns warrant depriving Madoff customers of the rights to which they are entitled under the Bankruptcy Code, although such concerns should certainly be addressed in determining how responsibilities should be allocated once a Madoff trustee is appointed.

The application of the Bankruptcy Code to govern the distribution of Madoff's assets is further supported by the fact that at times, a Madoff bankruptcy trustee may have stronger or more direct rights to property than the Government. The Seventh Circuit addressed this very issue in another case involving a Ponzi scheme:

> Everything would have been clearer had the United States initiated an involuntary bankruptcy proceeding against [the criminal defendant]. That not only would have brought to the fore § 548 [avoidance powers] of the Bankruptcy Code but also would have provided a superior way to marshal [the criminal defendant's] remaining assets and distribute them to her creditors. Although § 853(n)(1) allows the Attorney General to use forfeited assets for restitution, *it does not create a comprehensive means of collecting and distributing assets.* Bankruptcy would have made it pellucid that [certain creditors] cannot enjoy any priority over the other victims and cannot reap a profit while . . . other creditors go begging.

*United States v. Frykholm*, 362 F.3d 413, 417 (7th Cir. 2004) (Easterbrook, J.) (emphasis added). By way of another example of a bankruptcy trustee's rights to estate property, Chapter 15 of the Bankruptcy Code empowers the trustee "to act in a foreign country on behalf of an estate created under Section 541 . . . in any way permitted by foreign law." 11 U.S.C. § 1505; *see also* Collier

on Bankruptcy § 1501.01 (15th Ed.) ("Chapter 15 was added to the Bankruptcy Code . . . to encourage cooperation between the United States and foreign countries with respect to transnational insolvency cases. This new chapter of the Bankruptcy Code incorporates the Model Law on Cross-Border Insolvency promulgated in 1997 by the United Nations Commission on International Trade Law."). A Madoff trustee's ability to marshal assets located overseas may prove particularly beneficial to creditors in this action. In contrast, the Government has not demonstrated that its forfeiture claims to extraterritorial property will be honored in foreign jurisdictions or that it has avoidance powers commensurate with a bankruptcy trustee.

Parallel civil, criminal, and bankruptcy cases regularly proceed concurrently and cooperatively, without undue cost or complication and without objection from the Government, as demonstrated by the *Dreier* case, discussed above. There is no reason that such cooperation cannot be achieved in the present case, particularly given that the BMIS trustee has already indicated his willingness to cooperate with the Government and any Madoff trustee appointed. *See* Letter Submitted on Behalf of Irving Picard, *SEC v. Madoff*, No. 98-10791 (S.D.N.Y. submitted Apr. 8, 2009) (Exhibit B).

> **B. There is Likely to Be Madoff Property Beyond the Reach of the Government's Forfeiture Rights or to Which the Relation-Back Doctrine Does Not Apply, and Such Property Should be Protected For Creditors By Placing Madoff in Bankruptcy**

The Government contends the placing Madoff in bankruptcy is unnecessary because *all* of Madoff's property is purportedly subject to forfeiture, leaving no property to form a bankruptcy estate. DOJ Opposition at 2; SEC Opposition at 2. The Government's argument is based on two incorrect assumptions. First, the Government assumes that Section 853(a) allows for forfeiture of *all* of Madoff's property, even property that bears no nexus to the crimes.

Second, the Government fails to note that the relation-back doctrine set forth in Section 853(c) does not apply to substitute property.

### 1. It is Unlikely that *All* of Madoff's Property Will Be Subject to Forfeiture

Section 853(a) provides in pertinent part that

> [a]ny person convicted of [a crime] shall forfeit to the United States . . . :
>
> (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of [the crime]; and
>
> (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of [the crime].

21 U.S.C. § 853(a); *see also* 18 U.S.C. §§ 981(a), 982(a). Although the provisions of Section 853 are "to be liberally construed to effectuate its remedial purposes," 21 U.S.C. § 853(o), the statute is not without limits. Moreover, Federal Rule of Criminal Procedure 32.2(b)(1) requires that the Government demonstrate "the requisite nexus between the property and the offense" in order to obtain a forfeiture. Fed. R. Crim. P. 32.2(b)(1). As such, it is far from clear that all of Madoff's property is subject to forfeiture.

Madoff has described that his fraud began "in the early 1990s." Madoff Plea Allocution at 2. Property he acquired prior to this time may be outside the reach of the Government's forfeiture rights. *See, e.g., United States v. Capoccia*, 503 F.3d 103, 116 (2d Cir. 2007) (vacating final order of forfeiture because "the government has not established . . . that the funds involved [earlier] transfers were [related to] the later, particular transfers of which [the defendant] was convicted"). Similarly, Madoff contends that his proprietary trading and market making businesses were legally operated separate from his fraudulent investment advisory business. Madoff Plea Allocution at 2. Proceeds generated from those businesses may be beyond the reach

of the Government's forfeiture rights. *See United States v. Jones*, 502 F.3d 388, 394 (6th Cir. 2007) (reversing judgment of forfeiture of criminal defendant's house, where government failed to demonstrate a nexus between the house the crime).

### 2. The Relation-Back Doctrine Does Not Apply to Substitute Property

The Government contends that, due to the relation-back doctrine codified in Section 853(c), "even if a bankruptcy case is filed prior to entry of a forfeiture order the bankruptcy estate will likely be divested of its interest in the property once the forfeiture order is entered." SEC Opposition at 2; *see also* DOJ Opposition at 2. However, by its express terms, Section 853(c) is inapplicable to "substitute property" forfeited pursuant to Section 853(p).[3]

In quoting the relation-back provision set forth in Section 853(c), the DOJ conveniently omitted the language expressly limiting its application to Section 853(a) forfeitures. DOJ Opposition at 2. Specifically, Section 853(c) provides that "[a]ll right, title, and interest in property *described in subsection (a)* vests in the United States upon the commission of the act giving rise to forfeiture under this section." 21 U.S.C. § 853(c) (emphasis added). By its express language, Section 853(c)'s relation-back provision *only* applies to property forfeited pursuant to Section 853(a), *not* substitute property forfeited pursuant to Section 853(p). *See, e.g., See United States v. Jarvis*, 499 F.3d 1196, 1204 (10th Cir. 2007) ("Both the relation-back and protective order provisions of § 853 are silent as to § 853(p) substitute property."); *United States v. Gotti*, 155 F.3d 144, 149 (2d Cir. 1998) (interpreting analogous forfeiture provision contained in 18 U.S.C. §1963 and holding that substitute property was not subject to pretrial restraint "because

---

[3] The "substitute property" provision of the forfeiture statute is contained in Section 853(p), which provides that where property subject to forfeiture is unavailable, "the court shall order the forfeiture of any other property of the defendant, up to the value of [the unavailable] property. 21 U.S.C. § 853(p)(2).

the restraints provision of Section 1963(d)(1) refers specifically to subsection (a) assets and does not mention subsection (m) substitute assets");[4] *USA v. Jennings*, No. 98-418, 2007 U.S. Dist LEXIS 46028, at *10-11 (N.D.N.Y. June 25, 2007) (citing *Gotti* and holding that "relation-back principle [does] not apply to substitute assets because § 853(c) only refers to § 853(a) forfeited property [not § 853(p) substitute property]"); *USA v. Kramer*, No. 06-200, 2006 U.S. Dist. LEXIS 89034, at *24 (E.D.N.Y. Dec. 8, 2006) (citing *Gotti* and holding that "the relation back provision does not apply to substitute assets.").

Based on the foregoing, the Government's assertion that there is unlikely to be property sufficient to form a Madoff bankruptcy estate is incorrect. *Accord In re Vitta*, No. 808-8192, 2009 Bankr. LEXIS 601, at *18 (Bankr. E.D.N.Y. Mar. 2, 2009) (ordering turnover of forfeited property to the bankruptcy trustee, because "[g]iven that relation back is not applicable in this case, the property did not vest in the [government] prepetition.").

## II. CONCLUSION

For the reasons stated herein, the Motion should be granted.

---

[4] *Accord United States v. Parrett*, 530 F.3d 422, 431 (6th Cir. 2008) ("[T]he plain language of 21 U.S.C. § 853 conveys Congress's intent to authorize the restraint of tainted assets prior to trial, but not the restraint of substitute assets."); *United States v. Field*, 62 F.3d 246, 249 (8th Cir. 1995) (same); *United States v. Ripinsky*, 20 F.3d 359, 363-64 (9th Cir. 1994) ("Because subsection (e) authorizes pretrial injunctions only to preserve 'property described in subsection (a),' and because subsection (a) describes only forfeitable assets and not substitute assets, we conclude that subsection (e) does not authorize the pretrial restraint of substitute assets."); *United States v. Floyd*, 992 F.2d 498, 502 (5th Cir. 1993) ("Congress made specific reference to the property described in § 853(a), and that description does not include substitute assets.").

Dated: April 9, 2009

>Respectfully submitted,
>
>MILBERG LLP
>
>s/ Jonathan M. Landers
>
>Jonathan M. Landers (JL 1468)
>Matthew Gluck  (MG 4148)
>Brad N. Friedman (BF 9309)
>One Pennsylvania Plaza
>New York, NY  10119-0165
>Telephone: (212) 594-5300
>Facsimile:  (212) 868-1229
>
>SEEGER WEISS LLP
>Christopher A. Seeger
>Stephen A. Weiss
>One William Street
>New York, New York
>Telephone: (212) 584-0700
>Facsimile:  (212) 584-0799
>
>*Attorneys for Movants*

CERTIFICATE OF SERVICE

I, Jonathan M. Landers, certify that on the 9th day of April 2009, I caused a true and correct copy of the foregoing REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION FOR PARTIAL RELIEF FROM INJUNCTION to be served on all parties to this action via electronic filing and on the following parties via Federal Express overnight delivery:

| | |
|---|---|
| Alexander M. Vasilescu, Esq.<br>Alistair Bambach, Esq.<br>Andrew Calamari, Esq.<br>Israel E. Friedman, Esq.<br>Preethi Krishnamurthy, Esq.<br>Regional Trial Counsel / Trial Unit Chief<br>Northeast Regional Office<br>Securities and Exchange Commission<br>3 World Financial Center<br>Room 400<br>New York, NY 10281-1022 | David J. Sheehan, Esq.<br>Douglas E. Spelfogel, Esq.<br>Alissa M. Nann, Esq.<br>Brian K. Esser, Esq.<br>John Moscow, Esq.<br>Jonathan R. Barr, Esq.<br>Lauren Resnick, Esq.<br>Richard J. Bernard, Esq.<br>Seanna Brown, Esq.<br>Baker Hostetler, LLP<br>45 Rockefeller Plaza<br>New York, NY 10111 |
| Irving H. Picard, Esq.<br>SIPA Trustee<br>Baker & Hostetler, LLP<br>45 Rockefeller Plaza<br>New York, NY 10111 | Marc Litt, Esq.<br>Assistant U.S. Attorney<br>United States Attorney's Office<br>for the Southern District of New York<br>1 St. Andrew's Plaza<br>New York, NY 10007 |
| Kevin H. Bell, Esq.<br>Josephine Wang, Esq.<br>Security Investment Protection Corporation<br>805 Fifteenth Street, NW<br>Suite 800<br>Washington, D.C. 20005-2207 | Ira Lee Sorkin, Esq.<br>Daniel James Horwitz, Esq.<br>Nicole Pappas De Bello, Esq.<br>Mauro Michael Wolfe, Esq.<br>Dickstein Shapiro, LLP<br>1177 Avenue of the Americas<br>New York, NY 10036-2714 |

    s/ Jonathan M. Landers