Securities and Exchange Commission v. Madoff et al    Doc. 47

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -X
SECURITIES AND EXCHANGE COMMISSION,

                    Plaintiff,              08 Civ. 10791 (LLS)

       - against -                          OPINION

BERNARD L. MADOFF and
BERNARD L. MADOFF INVESTMENT
SECURITIES LLC,

                    Defendants.
- - - - - - - - - - - - - - - - - -X
```

Noting that, although the individual defendant Bernard L. Madoff's assets have been frozen, they are not subject to any form of receivership, movants The Blumenthal & Associates Florida General Partnership, Marc Cherno, Judith Rock Goldman, the Horowitz Family Trust, Steven Morganstern, M.D., The Martin Rappaport Charitable Remainder Unitrust, and Martin Rappaport, alleged victims of Madoff's fraud, move to modify article V of the December 18, 2008 Order on Consent Imposing Preliminary Injunction, Freezing Assets and Granting Other Relief Against Defendants (the "Preliminary Injunction"), incorporated in the February 9, 2009 Partial Judgment on Consent Imposing Permanent Injunction and Continuing Other Relief, to allow movants to file an involuntary bankruptcy petition against Mr. Madoff in the United States Bankruptcy Court for the Southern District of New York pursuant to section 303(b) of the Bankruptcy Code.

The relief sought by the motion is opposed by the Securities and Exchange Commission, the United States Attorney for the

Southern District of New York, and the Trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa et seq. (the "SIPA Trustee"). Each of their submissions slights the utility of a Bankruptcy Court proceeding over those of Mr. Madoff's assets which are not the proceeds of his crime or forfeitable substitute property (hereinafter "proceeds"), but should be deployed to meet obligations to his creditors.

The SEC assumes, with no citation to proof, that Mr. Madoff individually has few, if any, assets that are not the proceeds of his crimes. See its Objection at 2 ("Madoff's bankruptcy estate will either be devoid of property from inception or will be divested of most, if not all, of Madoff's property interests once the forfeiture process is completed").

The SIPA Trustee, who claims to stand "alone as the entity that can deliver maximum relief to victims from the liquidation of Mr. Madoff's assets" (Apr. 8, 2009 letter of David Sheehan, Esq. to the Court at 2), disregards that distribution under SIPA goes to those who invested in BLMIS directly as its "customers" rather than the substantial number of those whose losses stemmed from investments made through intermediaries.

The United States Attorney emphasizes that the criminal forfeiture processes comprise a wholly separate and independent system of recovery and distribution of specific items of property

(subject to proof that the asset substitutes for or is proceeds of a criminal offense) in which Mr. Madoff's unsecured general creditors have no standing, and which is not subject to a bankruptcy's automatic stay. See Apr. 8, 2009 letter of AUSA Sharon Frase to the Court.

No opponent to the relief sought by the motion offers as familiar, comprehensive, and experienced a regime as does the Bankruptcy Code for staying the proliferation of individual lawsuits against Mr. Madoff individually, marshaling his personal assets other than those criminally forfeitable, and distributing those assets among his creditors according to an established hierarchy of claims.

A Bankruptcy Trustee has direct rights to Mr. Madoff's individual property, with the ability to maximize the size of the estate available to Mr. Madoff's creditors through his statutory authority to locate assets, avoid fraudulent transfers, and preserve or increase the value of assets through investment or sale, as well as provide notice to creditors, process claims, and make distributions in a transparent manner under the procedures and preferences established by Congress, all under the supervision of the Bankruptcy Court.

The concern that appointment of a Bankruptcy Trustee will increase administrative costs or delay recovery by victims is speculative, and outweighed by the benefits to Mr. Madoff's victims

of a Bankruptcy Trustee's orderly and equitable administration of his individual estate. Indeed, the Department of Justice itself contemplates contracting with a special master, trustee, or receiver to aid it in the distribution[1] of forfeited property. See Frase letter at fn. 5; Apr. 8, 2009 letter of Richard Weber at 1.

> Although [21 U.S.C.] § 853(n)(1) allows the Attorney General to use forfeited assets for restitution, it does not create a comprehensive means of collecting and distributing assets. Bankruptcy would have made it pellucid that [certain creditors] cannot enjoy any priority over other victims and reap a profit while [defendant's] other creditors go begging.

United States v. Frykholm, 362 F.3d 413, 417 (7th Cir. 2004).

For that portion of Mr. Madoff's property that is neither forfeitable criminally nor subject to the liquidation of BLMIS under SIPA (with its restrictive scope of distribution), movants should be able to seek the familiar and established relief set by Congress in the Bankruptcy Code, with its automatic stay of individual suits by platoons of individual litigants.

## CONCLUSION

The motion for relief from the Preliminary Injunction will be granted by separate order.

Dated: New York, New York
April 10, 2009

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.

---

1 The Attorney General, under his statutory authority to "take any other action to protect the rights of innocent persons which is in the interest of justice" (21 U.S.C. § 853(i)(1)), might consider saving administrative costs by delegating forfeited property to the bankruptcy estate.

- 4 -